Charese Rohny, OSB No. 953964
E-mail: crohny@mbjlaw.com
MCKANNA BISHOP JOFFE, LLP
1635 NW Johnson Street
Portland, Oregon 97209
Telephone: 503-226-6111

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JASON J. IHRIG,** | Civil Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **PACIFICORP, an Oregon corporation and registered public utility, PACIFICORP ENERGY, an Oregon assumed business name for PacifiCorp, and PACIFIC POWER, an assumed business name for PacifiCorp.** | (Disability Discrimination – ADA; Medical Leave – FMLA; Wrongful Discharge and Discrimination Against Public Policy for Reporting Unsafe Practices and Working Conditions; Common Law Wrongful Discharge) |
| Defendants. | **Demand for Jury Trial** |

**INTRODUCTION**

Plaintiff, Jason J. Ihrig, was discriminated against for speaking out on matters of safety and matters of public concern when he repeatedly raised concerns and spoke out against the performance of electrical work that included high risk wire management and tag out procedures. Plaintiff witnessed, opposed and reported unsafe work conditions, including improper tag-out procedures, electrical safety violations, management bypassing required lockout/tagout protocols and management falsifying related documentation. His opposition to unsafe work, and his

reports were made internally to PacifiCorp/Pacific Power's supervisors, managers, Human Resources, safety personnel and co-workers.  When Plaintiff spoke out on safety concerns, he was ridiculed, taunted, demeaned, and berated, and management yelled at him and finger-waved in his face.  Furthermore, PacificCorp/Pacific Power management repeatedly directed Plaintiff to cease reporting the unsafe conduct of his Supervisors and co-workers, even when that conduct put the lives of Plaintiff and his coworkers at risk.  Plaintiff also suffered a stroke in 2021. Following return to full duty, he became increasingly vigilant about workplace safety and continued to report unsafe working conditions. In response, the discriminatory treatment against him intensified. After repeatedly raising legitimate safety concerns and asserting his rights under the law, including his right to medical leave and protections associated with having, or being perceived as having, a disability, Plaintiff was subjected to escalating disciplinary measures. These actions culminated in his placement on a two-year Last Chance Agreement ("LCA"), which was designed to silence him and facilitate further discrimination based on his medical condition. Predictably, the LCA led to PacifiCorp/Pacific Power unlawfully terminating Plaintiff in late 2024 before the LCA's expiration.  The LCA and related disciplinary measures were pretextual and retaliatory, and Pacific Power's termination of Plaintiff unlawful.  This lawsuit is to make Plaintiff whole.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal questions arising under the ADA and FMLA) and 28 U.S.C. § 1367 (supplemental jurisdiction over related state law claims under RCW Chapter 49.60 and the Washington Family Leave Act).

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendants collectively resides in this district and a substantial part of the events giving rise to the claims occurred within this district and/or within the state of Washington.

**PARTIES**

3.      Plaintiff Jason Ihrig is an individual residing in the State of Washington, and at all relevant times was employed as a Hydro Wireman by Defendants PacifiCorp operating under assumed business names Pacific Power and PacifiCorp Energy.

4.      PacifiCorp is a registered and regulated electrical utility, and a domestic business corporation headquartered in Oregon, organized under the laws of Oregon with its principal place of business at 825 N.E. Multnomah Street, Portland, Oregon, 97232, and it regularly conducts business in both Oregon and Washington.

5.      PacifiCorp is an investor-owned utility, owned by Berkshire Hathaway Energy, providing electric retail service to customers in Oregon, Washington, Idaho, Utah, California and Wyoming.  PacifiCorp is a leading western U.S. energy service provider and the largest grid owner/operator in the West serving approximately 2.1 million customers.

6.      PacifiCorp has approximately 5,200 employees.

7.      Pacific Power is a regulated electrical utility doing business in Oregon and Washington. It is an assumed business name of PacifiCorp., and its primary place of business is at 825 N.E. Multnomah Street, Portland, Oregon, 97232.

8.      Pacific Power, based in Portland, Oregon, delivers power in Oregon, Washington and northern California to over 800,000 customers in those states.

9.      PacifiCorp Energy is a regulated electrical utility doing business in Oregon and Washington. It is an assumed business name of PacifiCorp, and its primary place of business at 825 NE Multnomah Street, Portland, Oregon 97232.

10.    PacifiCorp Energy operates 66,900 miles of distribution lines and 17,500 miles of transmission lines.

11.    One of PacifiCorp facilities is the Yale facility at 46500 IP 100 Road, Amboy, Washington, 98601.

12.    PacifiCorp, Pacific Power and PacifiCorp Energy, are known collectively hereinafter as "Defendants".

13.    Defendants are publicly registered public utilities in Oregon and Washington.

## FACTS

14.    Plaintiff was employed with Defendants from November 1997 until October 15, 2024.  At the time of his termination he was a hydro wireman.

15.    During times relevant to the allegations herein, Plaintiff worked at the Yale Plant on the Lewis River in Washington, which has 8 transformers and 4 hydroelectric dams.

16.    The following are employees of Defendants, who at all times were acting within the course and scope of their employment:

a.    At all relevant times, Don Berry was the Plant Manager.

b.    At all relevant times, Kade King was Director Employee Relations, Compliance & Disabilities.

c.    At all relevant times, Ali Shafaei was Managing Director, Renewable Generation.

d.    At all relevant times, Todd Buckbee was Plaintiff's General Foreman.

e.    At all relevant times, Eric Reese was the Operations Foreman.

17.    Plaintiff served on the Safety Committee at all relevant times.

18.    In addition to his salary and benefits, employees at Yale facility, such as Plaintiff, were provided company housing near their work.

## Background Facts Pertaining to Disability and Medical Leave

19.    Plaintiff suffered a stroke on or about October 25, 2021.

20.    Plaintiff developed one or more medical conditions qualifying as disabilities under the Americans with Disabilities Act (ADA) and Washington Law Against Discrimination (WLAD), RCW Chapter 49.60.

21.    The stroke caused temporary cognitive and neurological symptoms.  These symptoms constituted a disability under relevant federal and state law.

22.    Plaintiff was on medically approved medical leave from October 25, 2021 until April 2022 related to his stroke.

23.    Plaintiff returned to modified duty, and after one week supervisor John McSmith said Plaintiff could not be on light duty needed to return to work without restrictions. Plaintiff asked if he could return to work driving smaller trucks that did not require a Commercial Driver's License (CDL), and he was denied.

24.    Defendants denied returning Plaintiff to work until he had a full release. Therefore, Plaintiff took short term disability until he was released to full duty at the end of April 2022.

25.    Plaintiff notified Defendants of the disabilities and requested reasonable accommodations, including time off and modified duties, such as only operating vehicles that did not require a CDL.

26.    Defendants have a history of failing to engage in the interactive process and failed to accommodate Plaintiff's disability.

27.     Defendants had knowledge of Plaintiff's disabilities.

28.     Defendants' management perceived Plaintiff as being mentally impaired, based upon his stroke history, and used this perception as a basis for imposing heightened scrutiny and eventual discipline.

29.     Defendants and their employees and managers regarded Plaintiff as having disabilities.

   a.   Plaintiff was perceived by coworker Steve Hasson who reported to management that Plaintiff was not "in the right frame of mind" on or about June 14, 2023.

   b.   Despite management alleging that Plaintiff was threatening which resulted in the Last Chance Agreement of June 30, 2023, coworker Chris Hanson stated that he "didn't find [Plaintiff's alleged comment] as threatening" and didn't feel that "he'd act on it or do ill harm", Hanson added that he did not observe Plaintiff was malicious or had ill intent. Yet despite this, Defendants imposed a discriminatory Last Chance Agreement upon Plaintiff for two years.

   c.   Defendants further required as part of the LCA that Plaintiff complete an assessment with the Company's EAP provider and for a fitness for duty examination.  During the time between the LCA and being released to duty he was required to use sick leave.

30.     Plaintiff took leave under the Family and Medical Leave Act (FMLA) and Washington Family Leave Act (WLFA), for which Plaintiff was eligible. Defendants interfered with Plaintiff's right to take leave and retaliated against Plaintiff for attempting to do so.

31.     As a result of Plaintiff's stroke on or about October 25, 2021, he was unable to hold a CDL for one year. Plaintiff requested to only operate vehicles which did not require a CDL, which would allow him to return to work. Although Plaintiff's health care provider released Plaintiff to return to work on modified duty, and despite Plaintiff utilizing operating a vehicle that required a CDL only twice while employed with Defendants for fourteen years, Defendants denied the requested modified duty without engaging in an interactive process. Plaintiff was therefore, forced to remain on medical leave through April 2022, for a total of approximately five months.

32.      In retaliation for exercising his medical leave rights, he was denied a reasonable accommodation, forcing him to remain on medical leave, and forced to work overtime upon his return.

### Facts Pertaining to Safety Reporting that led to Defendants
### Retaliated Against Plaintiff in Violation of Public Policy

33.     Throughout the course of his employment, and increasingly toward the latter part of his employment, Plaintiff made protected complaints about serious safety violations, state and/or or federal rules or laws, and/or what he believed in good faith were violations, including violations he believed violated OHSA and other safety rules, regulations and laws relevant to his work.

34.     Plaintiff's complaints are protected as matters of public policy, and under RCW 49.60.210 and RCW 49.60.230–.250.

35.     Electrical workers are required to follow extensive safety rules and regulations, which Plaintiff took seriously.

36.    Plaintiff is a knowledgeable, careful, safe and effective journeyman who is passionate when it comes to safety.

37.    After a history of speaking up about safety, and becoming more vigilant after his stroke, in March 2024, Plaintiff volunteered to be Chairman of the Safety Committee.

38.    In March 2024, Plaintiff stopped coworkers from working on an ungrounded unit. Plaintiff made a report to Defendants regarding the safety violation. Rather than report the violation per Company Policy, management counseled Plaintiff.

39.    Plaintiff reported to General Foreman, Todd Buckbee that a plant operator was frequently putting Plaintiff's and others' lives in danger. In response Buckbee told Plaintiff to, "put on blinders." On July 8, 2024, Plaintiff reported the same information to Don Berry. Berry admitted at a later meeting that he did nothing to follow up on this information.

40.    On July 29, 2024, Plaintiff reported to Todd Buckbee that a coworker had worked all week without signing on to the tag out, had broken the limited approach distance, and touched a live DC circuit. No action was taken.

41.    On July 26, 2024, Plaintiff witnessed Plant Manager Berry falsifying documentation stating that he had signed off on work before mechanics signed on to a tag out in violation of Company procedures and WAC.

42.    On September 18, 2024, Plaintiff stopped a co-worker who was unqualified from taking a ladder and climbing over a cage that exposed high voltage. The co-worker resisted doing work safely, Plaintiff had to request three times asserting that it violated safety rules that were also in the Defendants' policies and their Accident Prevention Manual. The outcome was a verbal argument.

43.    On or about September 19, 2024, Plaintiff informed his foreman that there were issues with how Defendants planned to bring the plant back online after a planned power outage. Plaintiff was told that they would discuss it at the following day's morning meeting, also called a tailboard meeting.

44.    On or about September 20, 2024, Plaintiff and two plant operators were discussing work for the day and related safety concerns, and one of the plant operators asked the Operations Foreman, Eric Reese, if they would be reviewing the work to be completed. Reese proceeded to stick his finger in Plaintiff's face and shouted at him to "shut up" multiple times, also telling Plaintiff that he, "would never make it in the real world."  Plaintiff remained seated, and requested not be spoken to that way.  When Reese kept shouting, Plaintiff and Reese proceeded to have a verbal argument in the hallway. Following that, Plaintiff was directed to, and did perform his work at the Yale facility thereafter.  Contrary to a critical safety rule in job planning, no "tailboard" meeting occurred or safety meeting on how the work was needed to be performed.

45.    Plaintiff was dismissed and ignored for years, following his stroke. Due to the emotional stressors in his life affecting his mental health, his frustration level was a near breaking point that he was being ignored and dismissed.

46.    Defendants retaliated against Plaintiff for engaging in these protected activities by requiring him to endure a fitness for duty exam with no justification, placing him on a retaliatory LCA, and ultimately terminating his employment.


//

//

**Facts Pertaining to Adverse Actions, the Last Chance Agreement**

**And Subsequent Whistleblowing Activities prior to Termination**

47.     On or about June 13, 2023, Plaintiff attended a medical appointment and subsequently reported to the worksite, where he observed co-workers Chris Hansen and Steve Hasson eating lunch. Plaintiff initiated a conversation regarding a written reprimand he had received on June 2, 2023, expressing his belief that the discipline was unjust and appeared to be in retaliation for raising workplace safety concerns with his manager. During the conversation, Mr. Hasson responded dismissively, stating that Plaintiff should feel fortunate to have employer-provided housing. Plaintiff interpreted Hasson's comment as an attempt to minimize or deflect his legitimate safety concerns.

48.     On June 14, 2023 the Defendants engaged in a retaliatory investigation based on Plaintiff's interaction with Hansen and Hasson the previous day. Alleging an isolated comment and distorted version of events, Defendants ignored one witness' version in favor of another distorted version, when it accused Plaintiff of "threatening" behavior, in direct contradiction to a coworker's testimony who confirmed that he did not find Plaintiff threatening and saw no ill intent).

49.     Defendants retaliated further against Plaintiff with a June 30, 2023 Last Chance Agreement, another adverse action related to his asserting his right to medical leave, his disability, and his whistleblower activity and designed to set-up the inevitable termination.

50.     Defendants perceived and regarded Plaintiff as having a disability both before and at the time they disciplined him on June 14, 2023.  As further discrimination, Defendants put in the LCA that Plaintiff was required to utilize his sick leave for any time off the Defendants required from the date of the LCA until the company required fitness for duty examination.

51.    Because Defendants perceived and regarded Plaintiff as psychologically disabled, because they intended to retaliate for his speaking out, and because they wanted to chill his speaking out on safety, Defendants required Plaintiff attend a Fitness for Duty examination on July 13, 2023, performed by Jennifer Jutte, PhD.

52.    Defendants further required Plaintiff to undergo a criminal background check regarding any inappropriate behavior.

53.    On July 19, 2023, upon Plaintiff's return to work after the fitness-for-duty exam, Plant Manager Berry "coached" and intimidated him, again criticizing him for raising safety concerns.

54.    In early 2024, management began citing Plaintiff for minor alleged "unprofessional conduct."

55.    On February 2024, in further retaliation for Plaintiff speaking out about safety, he was disciplined for engaging in "unprofessional conduct."

56.    On October 8, 2024, in further retaliation for Plaintiff speaking out about the urgent unsafe events at work, Plaintiff was investigated for being "unprofessional" as it related to his work tasks and for using profanity that related to a job pre-plan, "tailboard" meeting, when he urgently spoke up about safety concerns.

57.    Though the interactions that Plaintiff was disciplined for involved coworkers or supervisors, such as the September incident where Reese put his finger in Plaintiff's face and told him repeatedly to shut up, no other employee was alleged to have violated the policy for which Plaintiff was placed on a LCA and ultimately terminated for violating or disciplined in any manner.

58.     On October 15, 2024, shortly before the LCA was to expire, Defendants abruptly terminated Plaintiff's employment.

59.     PacifiCorp, PacifiCorp Energy and Pacific Power are jointly and severally liable.

60.     Plaintiff timely filed a Charge of Discrimination with the EEOC, and is awaiting a Notice of Right to Sue.

## FIRST CLAIM FOR RELIEF

### Disability Discrimination in Violation of the Americans with Disabilities Act

### 42 U.S.C. § 12101 et seq.

61.     Plaintiff incorporates all preceding paragraphs.

62.     Plaintiff has a medical condition that substantially limits one or more major life activities.

63.     Plaintiff was regarded as having a disability because of Plaintiff's actual or perceived physical or mental impairments, whether or not those impairments limited a major life activity.

64.     Defendants repeatedly discriminated against Plaintiff as a qualified individual on the basis of his disability in regard to the terms, conditions, and/or privileges of his employment and his subsequent termination. This included denying his reasonable accommodation request, subjecting him to excessive scrutiny, and ultimately disciplining and terminating him when he took protected medical leave or exhibited symptoms of his condition.

65.     The Last Chance Agreement at Section D further demonstrated Defendants unlawful motive by it discriminatory provision stating "Ihrig understands that any Company approved, extended absence for any reason, including absence due to a disability or any Family Medical Leave (FMLA) purpose, will result in an extension of the 'Active Discipline Period' for a period of time equal to the absence" violated the ADA.

66.     The LCA, and any extension or consequences flowing from it, were unlawfully motivated by disability discrimination, perceived disability, retaliation for protected safety complaints, and retaliation for asserting leave rights. Each was a substantial motivating factor.

67.     Defendants further discriminated against Plaintiff by requiring a medical examination of Plaintiff to determine the nature and severity of his disability without a business necessity to do so. Defendants used a demand for a medical examination as a pretext to harass Plaintiff.

68.     Defendants failed to make reasonable accommodations to the known limitations of Plaintiff who was an otherwise qualified individual with a disability

69.     Plaintiff's disability was a substantial motivating factor in Defendants' discrimination against Plaintiff.

70.     Defendants discriminated against Plaintiff on the basis of disability, failed to reasonably accommodate, and failed to engage in the interactive process, in violation of the ADA.

71.      Defendants' discrimination against Plaintiff due to his disability through its failure to provide reasonable accommodations and its refusal to grant Plaintiff protected leave constitutes unlawful employment practices under 42 U.S.C. § 12112.

72.     On June 14, 2023 the Defendants engaged in a retaliatory investigation that resulted on June 30, 2023 in a Last Chance Agreement was a discriminatory, adverse act based upon Plaintiff asserting his rights to medical leave due to his stroke and disability.

73.     As a result of the unlawful actions alleged herein, Plaintiff suffered and continues to suffer severe emotional distress, mental pain and anguish, humiliation, and loss of enjoyment of life. Plaintiff is entitled to non-economic compensatory damages sufficient to compensate him

for his emotional pain and suffering, anxiety, embarrassment, loss of self-esteem, loss of dignity, sleeplessness, humiliation, and other non-economic damages in such amount to be determined at trial by jury.

74.     As a result of the unlawful actions alleged herein, Plaintiff has suffered economic damages.  Plaintiff is entitled to recover back pay, front pay, lost benefits, medical expenses, and out of pocket expenses in an amount to be proven at trial plus interest.

75.     Defendants' acts were done intentionally with an improper, abusive, discriminatory, and retaliatory motive, and with reckless indifference to Plaintiff's state and federally protected rights and with reckless disregard to public health and safety. Such conduct should not be tolerated by this society, and punitive damages in an amount found appropriate by a jury, and available under applicable law, should be assessed against Defendants to punish Defendants and deter such conduct in the future.

76.     Plaintiff has hired legal counsel to prosecute his claim and is entitled to an award of reasonable attorney fees and costs, and expert witness fees incurred herein, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k).

## SECOND CLAIM FOR RELIEF

## (Violation of 29 U.S.C. § 2615(a)(1) –

## Family Medical Leave Act (FMLA) - Interference)

77.     Plaintiff incorporates all preceding paragraphs.

78.     Plaintiff was entitled to leave under the FMLA and exercised his rights.

79.     At all material times, Defendants were covered employer under FMLA because each entity.

80.     At all times material here, Plaintiff had a serious health condition and is an eligible employee under 29 U.S.C. § 2691.

81.    Defendants violated the FMLA by unlawfully interfering with, restraining and/or denying the exercise of Plaintiff's rights by attempting to take or taking disciplinary action against Plaintiff as described herein.

82.    Defendants restrained or interfered with Plaintiff's rights for taking leave, or restraining his anticipated rights to future leave in violation of 29 U.S.C. § 2615(a)(1).

83.    Plaintiff suffered adverse and disciplinary employment actions as a result of his asserting his rights to medical leave, taking protected activity and/or due to his anticipated additional medical leave.

84.    The Last Chance Agreement was an adverse and discriminatory action that resulted due to Plaintiff asserting his rights to medical leave due to his stroke and resulting medical treatment and conditions.

85.    The Last Chance Agreement was an adverse and discriminatory action based upon Plaintiff asserting his rights to medical leave and designed to restrain Plaintiff from taking further medical leave and to punish him if he did.

86.    The adverse actions Defendants engaged in were designed to dissuade a reasonable work from making or supporting a charge of discrimination.

87.    Furthermore, the Last Chance Agreement specifically at Section D stating "Ihrig understands that any Company approved, extended absence for any reason, including absence due to a disability or any Family Medical Leave (FMLA) purpose, will result in an extension of the 'Active Discipline Period' for a period of time equal to the absence" violated the FMLA and interfered with his rights.

88.    The LCA was pretextual bad acts against Plaintiff.

89.    Defendants unlawful actions constitute bad faith, malicious or willful and wanton violations of the FMLA.

90.    Plaintiff is entitled to lost pay resulting from the employer's illegal conduct pursuant to 29 U.S.C. §2617(a)(A) equal to any wages, salary, employment benefits or other compensation denied employee.

91.    Given the employer acted in bad faith, Plaintiff is entitled to liquidated damages equal to the amount of compensatory damages awarded under 29 U.S.C. § 2617

92.    Plaintiff is further entitled to attorney fees and costs.

## THIRD CLAIM FOR RELIEF

### (Violation 29 U.S.C. § 2615(a)(2), (b) –

### Family Medical Leave Act (FMLA) - Retaliation )

93.    Plaintiff incorporates all preceding paragraphs.

94.    Plaintiff was entitled to leave under the FMLA and exercised his rights.

95.    Defendants interfered with Plaintiff's rights and retaliated against him for taking leave, in violation of 29 U.S.C. § 2615(a) and (b); 29 U.S.C. §2617.

96.    The Last Chance Agreement was a discriminatory, adverse act based upon Plaintiff asserting his rights to medical leave due to his stroke and resulting medical treatment and conditions.

97.    Furthermore, the Last Chance Agreement specifically at Section D stating "Ihrig understands that any Company approved, extended absence for any reason, including absence due to a disability or any Family Medical Leave (FMLA) purpose, will result in an extension of the 'Active Discipline Period' for a period of time equal to the absence" violated the FMLA and was in retaliation for his asserting his rights to leave for his stroke and related leave such as for his doctors' appointments.

98.    Defendants' unlawful actions constitute bad faith, malicious or willful and wanton violations of the FMLA.

99.    Plaintiff is entitled to lost pay resulting from the employer's illegal conduct pursuant to 29 U.S.C. §2617(a)(A) equal to any wages, salary, employment benefits or other compensation denied employee.

100.    Given the employer acted in bad faith, Plaintiff is entitled to liquidated damages equal to the amount of compensatory damages awarded under 29 U.S.C. § 2617

101.    Plaintiff is further entitled to attorney fees and costs.

**FOURTH CLAIM FOR RELIEF**

**Disability Discrimination – Washington Law (RCW 49.60)**

102.    Plaintiff incorporates all proceeding paragraphs.

103.    Defendants' actions also violated RCW 49.60.180, including failure to accommodate and disability-based discrimination.

104.    Plaintiff engaged in protected activities under RCW 49.60, including reporting discrimination and/or unlawful workplace conduct.

105.    Plaintiff's protected activities were the substantial and motivating factor for Defendant's discriminatory conduct.

106.    Plaintiff incorporates all preceding paragraphs.

107.    Plaintiff has a medical condition that substantially limits one or more major life activities.

108.    Plaintiff was regarded as having a disability because of Plaintiff's actual or perceived physical or mental impairments, whether or not those impairments limited a major life activity.

109.    Defendants discriminated against Plaintiff as a qualified individual on the basis of his disability and/or perceived disability regarding the terms, conditions, and/or privileges of his employment and his subsequent termination. This included discriminating against Plaintiff in a way that adversely affected his terms and conditions of employment because of his disability as described above, by denying his reasonable accommodation, subjecting him to increased scrutiny and invasive medical examinations, imposing a disability-penalizing LCA, and terminating his employment.

110.    The Last Chance Agreement at Section D further demonstrated Defendants' unlawful motive by it discriminatory provision stating "Ihrig understands that any Company approved, extended absence for any reason, including absence due to a disability or any Family Medical Leave (FMLA) purpose, will result in an extension of the 'Active Discipline Period' for a period of time equal to the absence" violated the Washington disability anti-discrimination laws.

111.    The LCA, and any extension or consequences flowing from it, were unlawfully motivated by disability discrimination, perceived disability, retaliation for protected safety complaints, and retaliation for asserting leave rights. Each was a substantial motivating factor.

112.    Defendants further discriminated against Plaintiff by requiring a medical examination of Plaintiff to determine the nature and severity of his disability without a business necessity to do so. Defendants used a demand for a medical examination as a pretext to harass Plaintiff.

113.    Defendants failed to provide any meaningful accommodation for Plaintiff's stroke-related impairments and refused to engage in an appropriate dialogue. Plaintiff's disability was a substantial motivating factor in Defendants' discrimination against Plaintiff.

114.    Defendants discriminated against Plaintiff on the basis of disability, failed to reasonably accommodate, and failed to engage in the interactive process, in violation of the ADA.

115.    Defendants' discrimination against Plaintiff due to his disability through its failure to provide reasonable accommodations and its refusal to grant Plaintiff protected leave constitutes unlawful employment practices under Washington anti-discrimination based upon disability or a perceived disability.

116.    On June 14, 2023 the Defendants engaged in a retaliatory investigation that resulted on June 30, 2023 in a Last Chance Agreement was a discriminatory, adverse act based upon Plaintiff asserting his rights to medical leave due to his stroke and disability.

117.    As a result of the unlawful actions alleged herein, Plaintiff suffered and continues to suffer severe emotional distress, mental pain and anguish, humiliation, and loss of enjoyment of life. Plaintiff is entitled to non-economic compensatory damages sufficient to compensate him for his emotional pain and suffering, anxiety, embarrassment, loss of self-esteem, loss of dignity, sleeplessness, humiliation, and other non-economic damages in such amount to be determined at trial by jury.

118.    As a result of the unlawful actions alleged herein, Plaintiff has suffered economic damages.  Plaintiff is entitled to recover back pay, front pay, lost benefits, medical expenses, and out-of-pocket expenses in an amount to be proven at trial plus interest.

119.    Defendants' acts were done intentionally with an improper, abusive, discriminatory, and retaliatory motive, and with reckless indifference to Plaintiff's state and federally protected rights and with reckless disregard to public health and safety. Such conduct should not be tolerated by this society, and punitive damages in an amount found appropriate by

a jury, and available under applicable law, should be assessed against Defendants to punish

Defendants and deter such conduct in the future.

120.    Plaintiff has hired legal counsel to prosecute his claim and is entitled to an award

of reasonable attorney fees and costs, and expert witness fees incurred herein.

## FIFTH CLAIM FOR RELIEF

### Retaliation – RCW 49.60.210

121.    Plaintiff incorporates all preceding paragraphs.

122.    Defendants retaliated against Plaintiff in violation of RCW 49.60.210.

123.    As a result of Plaintiff exercising his rights as a disabled employee, who asserted

his rights to leave, and exercising his rights to report unsafe and/or activities he believed in good

faith were unlawful, Plaintiff was subjected to retaliation.

124.    Plaintiff made complaints about public safety, violations of law, or unethical

conduct protected under Washington's whistleblower statutes, and he became more hypervigilant

following his stroke, and following being ignored, and dismissed repeatedly by management.

The repeated nature of being dismissed and retaliated also resulted in increased anxiety.

125.    In response to Plaintiff's whistleblowing, Defendants discriminated against

Plaintiff in the terms, conditions and/or privileges of employment due to Plaintiff's good-faith

reporting to his superiors of information that he believed was evidence of violations of a state

law and/or federal rules or regulations. As such, his disclosures and speaking out on such safety

and unlawful matters as a whistleblower were protected activities.

126.    Defendants engaged in unfair practices of discrimination against Plaintiff for

opposing unlawful practices and opposing discrimination against him based on his disabilities,

hypervigilance to safety, asserting his rights to leave and opposing the LCA after he signed it and asserting it was as discriminatory and retaliatory.

127.    The actions of the Defendants, its agents and employees acting within the course and scope of their duties as set forth above and incorporated into this paragraph violated Plaintiff's rights under RCW 49.60.210 et seq.

128.    Plaintiff's protected activity was a substantial and motivating factor for the above described retaliatory actions and decisions made by Defendants.

129.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered economic damages and is entitled to an award of lost wages and benefits in an amount to be determined, plus prejudgment interest.

130.    Plaintiff is entitled to recover his reasonable attorney fees and costs pursuant to RCW 49.60.030.

### SIXTH CLAIM FOR RELIEF

### Common Law – Wrongful Discharge in Violation of Public Policy

131.    Plaintiff incorporates all preceding paragraphs.

132.    Plaintiff engaged in protected activity in reporting unsafe working conditions that endangered employee safety.

133.    Plaintiff, with a good faith belief of violations, reported violations of federal law and regulations, as well as state law and regulations, including but not limited to the following:

    a.  RCW 49.60.210;

    b.  Washington Administrative Code ("WAC") 296-803-507;

    c.  WAC 296-54-511;

    d.  WAC 296-54-51510;

      e.   WAC 296-54-517; and

      f.   WAC 296-45-105.

134.    Plaintiff engaged in protected activity in reporting safety violations that endangered public safety.

135.    Defendants' retaliatory actions, including the issuance and enforcement of the LCA, violated Washington public policy favoring workplace safety and employee rights to speak out and report unsafe conditions without retaliation.

136.    Defendants terminated Plaintiff for engaging in conduct encouraged by public policy, including reporting safety violations, speaking out about unsafe working conditions, speaking about work or working conditions that are or could be harmful to self, co-workers or the public,

137.    As a result of the unlawful actions alleged herein, Plaintiff suffered and continues to suffer severe emotional distress, mental pain and anguish, humiliation, and loss of enjoyment of life. Plaintiff is entitled to non-economic compensatory damages sufficient to compensate him for his emotional pain and suffering, anxiety, embarrassment, loss of self-esteem, loss of dignity, sleeplessness, humiliation, and other non-economic damages in such amount to be determined at trial by jury.

138.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered economic damages and is entitled to an award of lost wages and benefits in an amount to be determined.

139.    Plaintiff is entitled to front pay in lieu of reinstatement.

140.    Plaintiff is entitled to prejudgment interest on liquidated damages amount pursuant to RCW 4.56.110.

141.    Plaintiff is further entitled to post-judgment interest at the statutory rate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1.    Assume jurisdiction over each of the causes set forth herein.

2.    A declaration that Defendants have violated Plaintiff's protected rights and an order requiring Defendants to correct this deficiency.

3.    Grant a permanent injunction enjoining Defendants, its owners, officers, management personnel, employees, agents, successors, and assigns, and all persons in active concert or participation with Defendants, from engaging in any employment practice which retaliates against an employee on the basis of speaking out about safety for workers, public safety and whistleblowing matters of public concern on such terms as the court may direct.

4.    Grant equitable relief including but not limited to an expungement of all negative references to allegations of false statements and/or impropriety with respect to that may be in Plaintiff's personnel files.

5.    Order Defendants to create, implement and carry out policies, practices and programs providing for equal employment opportunities which affirmatively eradicate the effects of past and present unlawful employment practices, on such terms as the court may direct.

6.    Order Defendants to make Plaintiff whole by compensating Plaintiff for past and future pecuniary losses, including expenses, impairment of earning capacity, lost past and future earnings and benefits of employment, and such other losses as are consistent with the relevant law and awarded by a jury or otherwise established at trial.

7.    Order Defendants to pay Plaintiff awards of compensatory damages for non-pecuniary losses, including physical and emotional injury, pain and suffering, mental anguish,

humiliation, and embarrassment, and loss of enjoyment of life in an amount to be determined by a jury.

8.      Liquidated (double) damages under 29 U.S.C. § 2617(a)(1)(A)(iii). Such equitable relief under 29 U.S.C § 2617(a)(1)(B) as may be appropriate, including reinstatement, back pay, and/or front pay.

9.      Order Defendants to assess an award of punitive damages against the individual Defendants in an amount to be determined by a jury.

10.     Award Plaintiff his costs of suit and his reasonable attorney fees, costs and expert witness fees pursuant to 42 U.S.C. § 1988 and RCW 49.60.030.

11.     Order Defendants to pay prejudgment and post judgment interest, as appropriate, on all amounts due to Plaintiff as a result of this action.

DATED this __30th__ day of June, 2025.

MCKANNA BISHOP JOFFE, LLP


/s/ Charese Rohny_____
Charese Rohny, OSB No. 953964
Of Attorneys for Plaintiff